## BRIGGS *v.* MOORE.

### Opinion delivered April 9, 1917.

1. DEEDS—FRAUD IN PROCUREMENT—ACTION TO SET ASIDE.—In an action to set aside a deed for fraud, *held*, the evidence did not show that plaintiff was induced by fraud to execute the deed.

2. ADVERSE POSSESSION—ACQUISITION OF TITLE.—One A. placed his daughter and her husband in the possession of land. They claimed title as their own and paid the taxes, and occupied the land seven or eight years before A.'s death and two years thereafter, and then sold the land to B. *Held*, title was acquired by adverse possession, and that A.'s wife could not assert a dower right against B.

3. ESTOPPEL—GIVING POSSESSION OF LAND—EQUITABLE ESTOPPEL.—A. and C., a husband and wife, put their daughter in the possession of certain land, verbally giving her the same. When the daughter remained, in possession about nine years, C., the wife, after A.'s death, is estopped from setting up an interest in the lands, as against her daughter's grantee.

Appeal from Cleveland Chancery Court; *John M. Elliott,* Chancellor; affirmed.

*Woodson Mosley* and *S. J. Hunt,* for appellant.

1. Upon the death of S. R. Briggs, appellant was entitled to homestead and dower. 58 Ark. 298. The deed to Rogers was signed to convey the interest of the Peets.

She did not know she was signing away her interest. No consideration was paid her. The deed should be set aside as to her interest. 38 Ark. 429; 40 *Id.* 28; 84 *Id.* 493; 17 Ann. Cases, 992. She was old and absolutely dependent upon her children, and was not on an equal footing. 101 Ark. 141.

2. The deed to Moore was a mortgage. 13 Ark. 116, 125-6; 103 *Id.* 485, 494; 11 Ann. Cases, 313. It was usurious and void. 41 Ark. 331; 95 *Id.* 501. Appellant still had her interest, homestead and dower, and it is void as to her. Kirby's Digest, sec. 5393; 53 Ark. 457; 55 *Id.* 321.

3. As to the 100 acres, appellant is entitled to 40 as part of her homestead; also to dower. She is not estopped nor guilty of laches. 82 Ark. 367; 97 *Id.* 49; 89 *Id.* 23; 94 *Id.* 110; 96 *Id.* 545; 100 *Id.* 399, 402, 403; 77 *Id.* 43. She can not be deprived of dower except in the way provided by statute. Kirby's Digest, sec. 2702.

4. She is entitled to rents. 60 Ark. 478. Appellee is not entitled to pay for his improvements made after commencement of the action. Kirby's Digest, sec. 2574; 92 Ark. 189. A mortgagee in possession is not entitled to pay for permanent improvements. 97 Ark. 404. See also, 98 Ark. 320, 323, and cases cited.

*M. Danaher* and *Palmer Danaher,* for appellee.

1. No fraud was shown. 13 Cyc. 754. No false representations were proven. 97 Ark. 15; 71 *Id.* 305; 95 *Id.* 523; 13 Cyc. 583. Mrs. Briggs does not testify that she did not read the deed, and her means of information were equal to those of Rogers or any one else concerned. 95 Ark. 523. If representations were made, they were mere expressions of opinion as to the legal effect of the deed, and as to matters of law, and were not fraudulent.

2. Appellee was an innocent *bona fide* purchaser for value without notice. 6 Cyc. 319.

3. She is estopped. 14 Cyc. 963; 62 Mo. 485, 175; 16 Cyc. 757; 149 Cal. 589; 65 Fed. 742; 87 Tenn. 89; 122 Ark. 78.

4. A parol gift to a child by a parent is valid. 29 Cyc. 168.

5. No usury is shown. 39 Cyc. 1050. If so, it was personal to the borrower. 68 Ark. 8; 66 *Id.* 121.

6. By executing the deed, appellant abandoned the rents. 105 Ark. 646. See also 66 Ark. 259.

HART, J. Mrs. M. O. Briggs instituted this action in the chancery court against I. E. Moore to cancel and set aside certain deeds which she claimed were executed with the intention to defraud her of her dower and homestead interest in the lands embraced in the deeds.

The chancellor found the issues in favor of the defendant and entered a decree dismissing her complaint for want of equity. She has appealed to this court. A part of the facts are undisputed and are as follows:

S. R. Briggs died intestate on the 8th day of November, 1905, in Cleveland County, Arkansas, and at the time of his death owned and occupied as his homestead one hundred and twenty acres of the lands involved in this suit. He was survived by his widow, Mrs. M. O. Briggs, the plaintiff in this action, and by W. R. Briggs, a son and Etta Poteet, his daughter. After his death, while the plaintiff resided with her daughter and her husband, they all executed a deed to their interest in the homestead to Lee Rogers. The latter in turn executed a deed to the homestead to W. R. Briggs. A few months thereafter, W. R. Briggs executed a deed to the defendant, I. E. Moore, to said lands.

Mrs. Briggs resided with her daughter at the time they executed the deed to Rogers, but soon afterward went to live with her son and lived with him on the homestead at the time he conveyed it to the defendant Moore. Prior to his death, S. R. Briggs had given the hundred acres involved in this suit to his daughter, Etta Poteet, and she and her husband took charge of the land and occupied the same until February, 1907, when they executed a deed to the defendant Moore. No deed was ever executed by S. R. Briggs and his wife to Etta Poteet to

the hundred acres involved in this suit. Dower has never been allotted to the plaintiff in either of the tracts involved in this suit. On the 13th day of September, 1912, she instituted the present action asking that the deeds to the defendant Moore to both of the said tracts of land be cancelled and set aside, and that her dower and her homestead interest therein be assigned to her in the one hundred and twenty-acre tract.

(1) Mrs. Briggs testified that she never sold her interest in this land or received anything of value as consideration for signing the deed at the time her daughter Etta Poteet and her husband, Frank Poteet, executed the deed to Lee Rogers. She stated that she signed the deed believing that it was necessary to do so in order to enable Frank Poteet to convey his interest therein; that she was not informed that the deed conveyed her interest in the land until about two years after she had signed it; that soon after she signed the deed she left the residence of her daughter and went on the one hundred and twenty acre tract to live with her son.

She said, on cross-examination, that she had never received any rents from the place and knew that the defendant Moore had had charge of the place ever since the year 1908, and that Lee Rogers had the place during that year. She admitted that her son worked the land a part of that time and paid the rent to Mr. Moore.

Her daughter, Etta Poteet, and her husband, Frank Poteet, both testified that just before they conveyed their interest in the one hundred and twenty acres of the land known as the homestead tract, that W. R. Briggs came to see them and wanted them to sell their interest in it to him, and that they refused to do so because W. R. Briggs had refused to help out Frank Poteet in a trade just before that time; that they then made the trade with Lee Rogers and conveyed their interest in the land to him; that Mrs. Briggs fully understood what she was doing when she signed the deed; that they spoke to her about it a week or two after the deed was executed, when they

found that Rogers had made a deed to the land to W. R. Briggs; that the plaintiff laughed and said that she knew at the time she signed the deed that Rogers was buying it for her son.

The justice of the peace who took the acknowledgment of the plaintiff to the deed testified that he explained to her that she had conveyed her interest in the old home place, and that she was selling the land; that about a year before this time he had taken her acknowledgment to an oil deed on the same land, and that he explained to her the difference between the two deeds and told her that she was signing a deed to the land itself the last time.

W. R. Briggs admitted that he conveyed the land to the defendant Moore for $220, and stated that at the time he borrowed about $215. He stated that at that time the land was worth about $360, and that he thought that the transaction was intended to be a mortgage instead of an absolute sale from him to Moore.

On the other hand, Moore testified that the sale was an absolute one and that no effort was ever made by Briggs to pay back to him any money. He stated that after the sale was made he agreed to a resale of the land to Briggs upon the payment of $220 by Briggs on the first day of November, 1908; that no effort had been made by Briggs to pay him that amount; that he had inclosed the whole one hundred and twenty acres with a wire fence, making two separate fields of the land; that he had cleared and put into cultivation seventy-five or eighty acres and had built a little barn, at a cost of $900; that only about twenty-five acres had been cleared when he got possession of the land.

Lee Rogers testified that he bought the old home place for W. R. Briggs, and that the plaintiff knew that he was going to buy the place a week or two before the deed was signed; that she signed the deed without any representation on his part to mislead her, but does not know whether she signed it because she thought she was

going to finally get the title to it or because she thought her son was going to get the title to it.

Under these circumstances we think the chancellor was justified in finding that no fraud was practiced upon plaintiff to induce her to execute the deed to Lee Rogers. It is true she had a homestead interest in the land without executing that deed; but it seems to have been her purpose to give the fee in the land to her son. She does not herself testify as to any misrepresentations made to her by Lee Rogers to induce her to execute the deed. It will be remembered that she lived with her daughter and her husband at the time she executed the deed, and that soon after Rogers made the deed to her and her son took possession of the land, she went there to live with him. Her daughter and her husband both testified that when they found out Lee Rogers had executed a deed to W. R. Briggs in about a week after they had executed their deed to Rogers, they spoke to Mrs. Briggs about this fact, and she seemed pleased to know that her son had acquired title to the land and said that she had known that the land was to be conveyed to him by Rogers before she signed the deed. According to the testimony of Rogers, he bought the land either for Mrs. Briggs or her son, but did not know which. It is evident that he made no misrepresentations to the plaintiff, and thought that the plaintiff and her son had an understanding about the matter. This view is also borne out by the testimony of her son. He stated that his mother knew that he had acquired title to the land and had conveyed it to the defendant Moore. So it seems that she signed the deed in question in order that her son might eventually acquire title in fee to the land. This was a sufficient consideration and we are of the opinion that the chancellor did not err in holding that she was not induced by fraud to execute the deed to the hundred and twenty acre tract.

In this view of the case, it does not make any difference whether the sale from W. R. Briggs to Moore was an absolute or conditional sale. W. R. Briggs is not a

party to this suit, and his rights in the land are not in issue. The interest of the plaintiff in the land was divested out of her by the deed to Lee Rogers, and she is not concerned in the transaction between W. R. Briggs and the defendant Moore.

(2-3)  According to the testimony of Etta Poteet and her husband, her father in his lifetime first gave her sixty acres of land, and she and her husband went into possession of it. Subsequently her brother Charles died, and her father gave her an additional forty acres, making one hundred acres in all; that no deed was ever executed by S. R. Briggs and his wife to their daughter or her husband, but that they lived on this land for over seven years before S. R. Briggs died; that the land was regarded as belonging to them, and they continued to live on it for about two years after the death of S. R. Briggs until they conveyed it to the defendant Moore.

The plaintiff admitted that they had given to their daughter eighty acres of land and permitted her and her husband to go on it, and that they had lived on it and claimed it as their own for seven or eight years. This eighty acres referred to by her was part of the hundred-acre tract involved in this lawsuit.

The defendant Moore testified that he paid Etta Poteet and her husband the full value of the land at the time he purchased it; that he asked the plaintiff if the land belonged to them, and that she, her daughter and her daughter's husband all said that the land belonged to Etta Poteet; that he asked W. R. Briggs if the land belonged to Etta Poteet, and he said that it did and that his father had given her the land; that he knew that Etta Poteet and her husband had lived on the land ten or twelve years, and had sold the timber off of it before the death of S. R. Briggs; that he had constructed a good wire fence all around the hundred-acre tract and had cleared thirty-five acres of it and repaired buildings; that the value of the fences built by him on this tract is $375, and the value of all the improvements is $450.

It is true that plaintiff denied that she told Moore that the hundred acre tract belonged to her daughter. She stated that Moore asked her one day if she and her husband had ever made a deed to the land to the Poteets, and that she replied that they had not; that she told him that the Poteets did not have any title and that she did not know when they would get one. Be that as it may, as we have just seen, the plaintiff admitted that they had given to their daughter eighty acres of this land, and that she had occupied it with her husband for seven or eight years before S. R. Briggs died. They paid taxes on the land during all the time they occupied it and in every respect treated it as their own with the knowledge of S. R. Briggs and his wife, the plaintiff in this case. They sold the timber off of the land during the lifetime of S. R. Briggs.

Under these circumstances we think the chancellor was right in holding that the plaintiff was not entitled to have the deed from Etta Poteet and her husband to the defendant Moore set aside. A preponderance of the evidence shows that S. R. Briggs and his wife gave the hundred acre tract to the Poteets and put them in possession of it. Defendant was a purchaser of the land for a valuable consideration in good faith from the Poteets and under these circumstances the plaintiff would be estopped from asserting an adverse title thereto.

The decree will be affirmed.